MICHAEL F. NIENSTEDT, WSBA #6898
WILLIAM M. SYMMES, WSBA #24132
MATTHEW W. DALEY, WSBA #36711
WITHERSPOON · KELLEY
422 West Riverside Avenue, Suite 1100
Spokane, Washington 99201-0300
Telephone:     509 624 5265
Facsimile:     509 458 2728
Email:          mfn@witherspoonkelley.com
                wms@witherspoonkelley.com
                mwd@witherspoonkelley.com

Counsel for the Plaintiffs

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KAISER ALUMINUM CORPORATION, a Delaware corporation; and KAISER ALUMINUM WASHINGTON, LLC, a Delaware limited liability company, | Case No.: |
| Plaintiffs, | VERIFIED COMPLAINT |
| v. | |
| PAUL J. AINSWORTH and TERI L. TUCKER, individually and the marital community comprised thereof, | |
| Defendants. | |

The Plaintiffs, by and through its undersigned counsel and for cause of

action against the Defendants, allege, aver, and state:

VERIFIED COMPLAINT: 1

# I.  THE PARTIES AND THEIR RELATIONSHIPS

1.1     Kaiser Aluminum Corporation is a corporation organized under the laws of the State of Delaware.

1.2     Kaiser Aluminum Washington, LLC is a limited liability company organized under the laws of the State of Delaware.

1.3     Kaiser Aluminum Washington, LLC is a wholly owned subsidiary of Kaiser Aluminum Corporation; thus, Kaiser Aluminum Corporation and Kaiser Aluminum Washington, LLC are hereinafter collectively referred to as "Kaiser."

1.4     Kaiser and its affiliates operate the largest flat rolled aluminum products mill in the western United States; that plant is located in Spokane County, Washington, and is known as the Trentwood Works (hereinafter "Trentwood").

## A.     THROUGH CONSIDERABLE INVESTMENT, TIME, AND DILIGENCE, KAISER'S TRENTWOOD FACILITY EARNED ITS PLACE AS AN INDUSTRY LEADER.

1.5     Kaiser's Trentwood facility is a leading manufacturer of specialty aluminum products for aerospace and high strength and general engineering applications; Trentwood's products are manufactured to demanding specifications for the global aerospace and defense industries.

1.6     Kaiser's Trentwood facility focuses on technically challenging applications that allow Trentwood to utilize its core metallurgical and process technology capabilities to produce highly engineered specialty aluminum products

VERIFIED COMPLAINT: 2

with differentiated characteristics that provide those products competitive advantages in the market.

1.7     The global aerospace and defense industries use the products produced at Trentwood in applications that demand such properties as high tensile strength, superior fatigue resistance and exceptional durability even in harsh environments.

1.8     Aerospace manufacturers use high-strength aluminum alloys for a variety of structures that must perform consistently under extreme variations in temperature and altitude.

1.9     Because aluminum plate and sheet products are used in safety critical applications, quality and product consistency are critical factors. Suppliers and products must meet specialization requirements and pass a rigorous qualification process in order to sell to airframe manufacturers.  Kaiser is one of very few companies that has developed the technical expertise required to meet those requirements and to pass those qualification processes.  Achieving that qualification required Kaiser to make significant investment in research, development, and decades of operating experience.

1.10    Kaiser's Trentwood facility further seeks to differentiate itself by offering products which are engineered and manufactured to deliver enhanced

VERIFIED COMPLAINT: 3

product characteristics with improved consistency, so as to result in better performance, lower waste and, in many cases, lower production cost for its customers.

    1.11   In recent years, Kaiser has pursued significant capital spending initiatives at Trentwood to expand its manufacturing capabilities, increase capacity, improve efficiency, and enhance product quality.  In addition, a significant amount of Kaiser's research and development is devoted to product and process development within Trentwood's production operations, largely focused on controlling the manufacturing process to improve product quality, ensure consistency, and to enhance one or more specific product attributes.

    1.12   Manufacturing capacity continues to increase as foreign manufacturers, particularly in China, build new rolling mills and attempt to gain the technological expertise required to produce heat treat plate and sheet products, particularly for aerospace applications, that can compete with Trentwood.  Because that technical expertise has only been developed by a few companies through significant investment in research and development and decades of operating experience, foreign manufacturers spend considerable time and effort attempting to gain access to that expertise as well as the manufacturing expertise required to produce products with enhanced characteristics and consistency.

VERIFIED COMPLAINT: 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    MR. AINSWORTH WAS A KAISER EMPLOYEE, UNTIL HE RESIGNED TO JOIN NANSHAN.**

1.13    Paul J. Ainsworth and Teri L. Tucker are residents of the State of Washington.

1.14    Mr. Ainsworth and Teri L. Tucker are husband and wife and together form a marital community under the laws of the State of Washington.  All of Mr. Ainsworth's acts and conduct alleged herein were performed for the benefit of that marital community.

1.15    Mr. Ainsworth applied for employment with Kaiser, and on November 1, 2000, Mr. Ainsworth was hired as a Metallurgical Engineer at Trentwood.

1.16    On July 15, 2016, Mr. Ainsworth announced that he was resigning in order to accept a position with Shandong Nanshan Aluminum Co, Ltd. and/or one of its affiliates (hereinafter "Nanshan").   At the time of his announcement he held the position of Technical Manager at Trentwood.

1.17    Nanshan is part of the "Nanshan Group," which is a family of companies headquartered in China.

1.18    Upon information and belief, Mr. Ainsworth is working as a professor in Nanshan's "College of Materials Science and Engineering"; his primary responsibilities are teaching Nanshan employees and or consultants on various

VERIFIED COMPLAINT: 5

processes and methodologies to become more competitive in the United States and global aluminum markets.

## II.  SUMMARY OF DISPUTE

2.1    Mr. Ainsworth served as an integral part of Kaiser's Trentwood team for 15 years.  He was a high-level employee with free access to Kaiser's most confidential business and product information.  As a result of that extraordinary access, Mr. Ainsworth contractually agreed to maintain strict secrecy regarding Kaiser's proprietary and confidential information – even after his employment ceased.

2.2    During Mr. Ainsworth's tenure, Kaiser conceived and implemented significant improvements in aluminum flat rolling processes, as more particularly described above.

2.3    Due to Mr. Ainsworth's sudden departure, Kaiser reviewed his computer usage.  That review showed that in the two weeks leading up to his resignation, Mr. Ainsworth accessed approximately 70 of Kaiser's confidential documents.  Among other items, those documents contain the detailed confidential information regarding Kaiser, Trentwood, manufacturing practices, and regarding the technical information that enables Kaiser to produce the products described

VERIFIED COMPLAINT: 6

above.  Mr. Ainsworth had no legitimate reason to access those documents when he did.

2.4    Mr. Ainsworth's decision to work for Nanshan places Kaiser's confidential and proprietary information in danger.  It is impossible for Mr. Ainsworth to faithfully work for Nanshan while remaining faithful to his confidentiality obligations.  Disclosure of Kaiser's confidential information would be inevitable if Mr. Ainsworth is permitted to work as a Nanshan "professor."  The valuable information that Mr. Ainsworth has to teach belongs to Kaiser.

### III.  JURISDICTION & VENUE

3.1    The Court enjoys personal jurisdiction over the Defendants because they are residents of Spokane County, State of Washington and within the Eastern District of Washington.

3.2    This case arises, in part, under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836; the Court, therefore, enjoys jurisdiction over the subject matter of this case pursuant to 18 U.S.C. § 1331.  The Court enjoys supplemental jurisdiction over all other claims asserted herein pursuant to 18 U.S.C. § 1367.

### IV.  FACTUAL BACKGROUND

4.1    Kaiser reasserts and realleges all prior allegations as though set forth herein.

VERIFIED COMPLAINT: 7

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.    MR. AINSWORTH WORKED IN A POSITION OF GREAT RESPONSIBILITY AND TRUST WITH KAISER.**

4.2    Mr. Ainsworth is a metallurgical and process engineer by education; he began his career in 1997.

4.3    Mr. Ainsworth was hired at Kaiser on November 1, 2000; he was hired as a Metallurgical Engineer at Trentwood.  He was later promoted to Technical Manager, reporting to the Vice President of Trentwood.

4.4    As Technical Manager, Mr. Ainsworth was responsible, among other things, to:

    a.    oversee and implement process and product improvement projects;

    b.    provide technical support and guidance to production, maintenance, engineering, and sales and marketing groups; and

    c.    maintain manufacturing practices and procedures to optimize product quality/performance.

4.5    As Technical Manager, Mr. Ainsworth was part of the management team at Trentwood.

4.6    During his 15 years at Trentwood, Mr. Ainsworth was given access to nearly all of Kaiser's proprietary and confidential information, including:

    a.    casting protocols and practices;

VERIFIED COMPLAINT: 8

b.     homogenization processes;

c.     rolling practices;

d.     quench process controls;

e.     metallurgical practices; and

f.     Kaiser's product approval and qualification process.

4.7    In short, Mr. Ainsworth's job was to make Trentwood's aluminum production processes and aluminum products more competitive with higher quality.  And in 15 years of doing that job, Mr. Ainsworth gained intimate knowledge of Kaiser's most confidential business information.

## C.   MR. AINSWORTH AGREED TO KEEP KAISER'S CONFIDENTIAL INFORMATION IN STRICT SECRECY.

4.8    When Mr. Ainsworth joined the Kaiser team, he executed a written "Employee Agreement."

4.9    In that Employee Agreement, Mr. Ainsworth acknowledged that he would not: "disclose or use, directly or indirectly at any time, either during or subsequent to the said employment, any secret or confidential information, knowledge or data of [Kaiser's and its affiliates/parent] . . ."

4.10   During Mr. Ainsworth's initial training with Kaiser (and each year thereafter), he received and agreed to abide by Kaiser's "Code of Business Conduct

VERIFIED COMPLAINT: 9

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

and Ethics." That code specifically confirms Mr. Ainsworth's commitment to keeping Kaiser's (along with affiliates and parent) information strictly confidential.

**D. MR. AINSWORTH OVERSAW SIGNIFICANT PROCESS IMPROVEMENTS DURING HIS 15 YEARS WITH KAISER.**

4.11    During Mr. Ainsworth's 15 years with Kaiser (2000 to 2016), he oversaw a number of process improvements at Trentwood, including the development of manufacturing practices for the production of aerospace thick plate, significant improvements in manufacturing recovery, qualification of Trentwood produced aerospace products with major customers (including Lockheed, Boeing, and Airbus), manufacturing capacity expansions through new equipment installation, and the development and deployment of Kaiser's brand-named "Kaiser Select" products.

**E. MR. AINSWORTH QUIT WITHOUT PRELUDE AND WITHOUT DISCUSSION.**

4.12    On July 15, Mr. Ainsworth announced that he quit his employment with Kaiser.

4.13    At the same time, Mr. Ainsworth announced that he was joining one of Kaiser's Chinese competitors – Nanshan.

VERIFIED COMPLAINT: 10

**F.     KAISER INVESTIGATED MR. AINSWORTH'S CONDUCT AND LEARNED THAT HE WAS ACCESSING INFORMATION THAT WAS CONFIDENTIAL, PROPRIETARY, AND ENTIRELY UNRELATED TO HIS LEGITIMATE ACTIVITIES FOR KAISER.**

4.14    After Mr. Ainsworth quit, Kaiser reviewed his computer usage.

4.15    Kaiser discovered that during the two weeks prior to his sudden departure, Mr. Ainsworth accessed approximately 70 of Kaiser's confidential and proprietary computer files – for example:

      a.    On June 29, 2016, Mr. Ainsworth accessed documents regarding: (a) Kaiser's procedures for training employees through its "Casting College," and (b) a recent technical operational review. Each of those documents contain Kaiser's trade secrets and intellectual property. Each of those documents relate to Kaiser's ongoing efforts to maximize production efficiency and excellence. Importantly, none of those documents related to Mr. Ainsworth's job duties at the time.

      b.    On June 30, 2016, Mr. Ainsworth accessed about 15 highly confidential and proprietary documents. Those documents included photographs of how Kaiser set up its production machinery and detailed engineering drawings and other information regarding the

VERIFIED COMPLAINT: 11

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

set-up of that same production machinery.  None of these documents related to Mr. Ainsworth's job duties at the time.

4.16   In short, in the two weeks before Mr. Ainsworth's announcement, he accessed (without any legitimate reason) confidential business documents that would be exceptionally valuable to a competitor.

4.17   Upon information and belief, Mr. Ainsworth's access to Kaiser's confidential and proprietary documents, in the weeks leading up to his defection, was in furtherance of the misappropriation of Kaiser's trade secrets and confidential information for Nanshan's benefit.

## V.  FIRST CAUSE OF ACTION: VIOLATIONS OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *et seq.*)

5.1     Kaiser reasserts and realleges all prior allegations as though set forth herein.

5.2     Kaiser (along with its affiliates/parent) owns and possesses certain confidential, proprietary and trade secret information, as alleged above.

5.3     This confidential, proprietary and trade secret information relates to products and services used, sold, shipped and ordered, or intended to be used, sold, shipped and/or ordered in interstate and global commerce.

5.4     Kaiser (along with its affiliates/parent) has taken reasonable measures to keep such information secret and confidential.

VERIFIED COMPLAINT: 12

2aa66be9e346d81e

5.5     That confidential, proprietary and trade secret information derives independent economic value from not being generally known, and not being readily ascertainable, through proper means by another person who could obtain economic value from the disclosure or use of the information.

5.6     In violation of Kaiser's rights, Mr. Ainsworth misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.

5.7     Mr. Ainsworth's misappropriation of the confidential, proprietary and trade secret information was intentional, knowing, willful, malicious, fraudulent and oppressive.

5.8     Mr. Ainsworth has failed to return Kaiser's confidential and trade secret information, and has attempted to conceal his conduct.

5.9     On information and belief, if Mr. Ainsworth's conduct is not remedied, and if he is not enjoined, Mr. Ainsworth will continue to misappropriate, disclose, and use for his own benefit (and to Kaiser's detriment), Kaiser's trade secret information,

5.10    As the direct and proximate result of Mr. Ainsworth's conduct as aforesaid, Kaiser has suffered, and if Mr. Ainsworth's conduct is not stopped, will

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

continue to suffer, irreparable injury and damages, in an amount to be proven at trial.

5.11   Because Kaiser's remedy at law is inadequate, Kaiser seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary and trade secret information and other legitimate business interests. Kaiser's business will continue suffering irreparable harm absent injunctive relief.

5.12   Kaiser has a substantial likelihood of success on the merits because of Mr. Ainsworth's blatant, willful and malicious misappropriation of trade secrets through the improper and unlawful methods, as alleged herein.

5.13   Kaiser has been damaged by all of the foregoing, and is entitled to its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

## VI.  SECOND CAUSE OF ACTION: VIOLATION OF WASHINGTON'S TRADE SECRETS ACT

6.1   Kaiser reasserts and realleges all prior allegations as though set forth herein.

6.2   Mr. Ainsworth willfully and maliciously misappropriated Kaiser's (and its affiliates'/parent's) trade secrets in violation of applicable law, including the Washington Uniform Trade Secrets Act, RCW 19.108.010, *et seq*.

VERIFIED COMPLAINT: 14

6.3    The confidential and proprietary information Kaiser entrusted to Mr. Ainsworth constitutes trade secrets because: (a) Kaiser derives economic value from that information; (b) it is not generally known, and it is not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (c) Kaiser takes reasonable efforts to maintain the information's secrecy.

6.4    Mr. Ainsworth was obligated to maintain the secrecy of Kaiser's information.  He breached his duties to Kaiser by taking and using Kaiser's trade secrets and other confidential and proprietary information in order to gain an unfair advantage for his new employer and/or business.

6.5    Given the nature of Kaiser's trade secrets and given the nature of Mr. Ainsworth's new position with Nanshan, it is inevitable and unavoidable that Mr. Ainsworth would disclose Kaiser's trade secrets in his work for Nanshan.

6.6    Mr. Ainsworth's actual and/or threatened misappropriation of Kaiser's trade secrets must be enjoined under RCW 19.108.020.

6.7    Mr. Ainsworth's actual and/or threatened misappropriation of Kaiser's trade secrets subjects him to liability for Kaiser's actual loss, as well as any unjust enrichment paid to him.  Such amounts are to be proven at trial.

VERIFIED COMPLAINT: 15

6.8     Mr. Ainsworth's actual and/or threatened misappropriation of Kaiser's trade secrets is/was willful and malicious, subjecting him to exemplary damages under RCW 19.108.030, including up to double the amount of actual damages awarded to Kaiser.  Such amounts are to be proven at trial.

6.9     Mr. Ainsworth's actual and/or threatened misappropriation of Kaiser's trade secrets is/was willful and malicious, subjecting him to an award of reasonable attorneys' fees in Kaiser's favor, pursuant to RCW 19.108.040.

## VII.  THIRD CAUSE OF ACTION: BREACH OF CONTRACT

7.1     Kaiser reasserts and realleges all prior allegations as though set forth herein.

7.2     Mr. Ainsworth's Employment Agreement is a valid and binding contract.

7.3     All provisions within Kaiser's Employment Agreements, including the confidentiality provisions, are valid, enforceable, and are supported by sufficient consideration.

7.4     Kaiser has a legitimate business interest to protect its confidential information and the confidential information of its affiliate companies and parent company.

VERIFIED COMPLAINT: 16

7.5     Mr. Ainsworth breached his contractual confidentiality obligations by accessing Kaiser's confidential information for his or others' benefit.

7.6     Mr. Ainsworth's breach of his contractual obligations proximately caused Kaiser to suffer damages in an amount to be proven at trial.

7.7     Kaiser is entitled to recover damages, in an amount to be proven at trial, for Mr. Ainsworth's breach of contract.

## VIII. FOURTH CAUSE OF ACTION: BREACH OF DUTY OF LOYALTY/CONFIDENTIALITY

8.1     Kaiser reasserts and realleges all prior allegations as though set forth herein.

8.2     Mr. Ainsworth owed Kaiser a common law duty of loyalty pursuant to the facts and circumstances of the principal-agent relationship existing between them.

8.3     During the course of his employment with Kaiser, Mr. Ainsworth was entrusted with confidential information in order to perform services on behalf of Kaiser.  Kaiser trusted Mr. Ainsworth not to disclose the confidential information, or to otherwise use it to gain an unfair advantage over Kaiser.

8.4     Kaiser entrusted Mr. Ainsworth with confidential information in expectation that he would act for Kaiser's benefit and not in his own interest or the

VERIFIED COMPLAINT: 17

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

interest of Kaiser's competitors. Moreover, Kaiser depended on Mr. Ainsworth to contribute to Kaiser's continued success.

8.5    Having been entrusted with Kaiser's confidential information, Mr. Ainsworth's duty of loyalty required him not to use that information to Kaiser's detriment and/or to his own benefit.

8.6    By misusing and disclosing Kaiser's confidential information, Mr. Ainsworth breached his duty of loyalty to Kaiser.

8.7    As a direct result of such breaches, Kaiser has sustained, and will continue to sustain, damages in an amount to be proven at trial, and irreparable harm for which there is no adequate remedy at law.

## IX.  FIFTH CAUSE OF ACTION: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

9.1    Kaiser reasserts and realleges all prior allegations as though set forth herein.

9.2    While still employed by Kaiser, acting for his benefit and to the detriment of Kaiser, Mr. Ainsworth obtained confidential and proprietary information belonging to Kaiser (along with its affiliates/parent) from Kaiser's computers.

VERIFIED COMPLAINT: 18

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

9.3     Obtaining and using such information for any entity's benefit other than Kaiser, exceeded Mr. Ainsworth's authority to use business computers, and was in violation of applicable law.

9.4     Mr. Ainsworth's actions were intentional and were without Kaiser's knowledge, permission or authorization.

9.5     As a result of Mr. Ainsworth's violation of the Computer Fraud and Abuse Act, Kaiser has suffered damage and loss and will continue to be injured irreparably, while Mr. Ainsworth has been and will continue to be unjustly enriched.

## X.  SIXTH CAUSE OF ACTION: DECLARATION & INJUNCTION

10.1    Kaiser reasserts and realleges all prior allegations as though set forth herein.

10.2    The foregoing acts by Mr. Ainsworth have placed Kaiser's rights, status, and obligations under its contract with Mr. Ainsworth and under applicable law in danger of being impaired and infringed upon, in a manner that would irreparably harm Kaiser.

10.3    Kaiser is entitled to a declaration of its respective rights, status, and obligations under applicable contract and law.

VERIFIED COMPLAINT: 19

10.4   Kaiser is entitled to an injunctive order prohibiting Mr. Ainsworth from continuing to breach his contractual and other legal obligations.

## XI.  PRAYER FOR RELIEF

WHEREFORE, Kaiser prays for relief as follows:

11.1   For money damages, including exemplary damages, in an amount to be proven at trial;

11.2   That the Defendants and all persons/entities in active concert or participation with them be preliminarily and permanently enjoined from breaching and/or continuing to breach contractual obligations, statutory obligations, and common law obligations;

11.3   That the Defendants be ordered to account for all of their revenues from breaches of contractual obligations, statutory obligations, and common law obligations;

11.4   That the Plaintiff be awarded reasonable attorneys' fees and taxable costs in accord with contract and/or applicable law;

11.5   For such other relief as the Court deems just and equitable under the premises.

///

///

VERIFIED COMPLAINT: 20

RESPECTFULLY SUBMITTED, this  29th  day of September, 2016.


**WITHERSPOON • KELLEY**


  s/ William M. Symmes
MICHAEL F. NIENSTEDT, WSBA #6898
WILLIAM M. SYMMES, WSBA #24132
MATTHEW W. DALEY, WSBA #36711
422 West Riverside Avenue, Suite 1100
Spokane, Washington 99201-0300
Phone: 509 6245265
Email:  mfn@witherspoonkelley.com
        wms@witherspoonkelley.com
        mwd@witherspoonkelley.com

Counsel for the Plaintiffs

VERIFIED COMPLAINT: 21

**VERIFICATION**

SCOTT ENDRES, on oath says:

1.    I am the Vice President for Flat Rolled Products for Kaiser, and I am the most senior Kaiser executive assigned to Trentwood.

2.    I am authorized to speak on Kaiser's behalf regarding this matter.

3.    I have read the foregoing Verified Complaint, know the contents thereof, and believe the contents to be true and correct, to the best of my knowledge.

RESPECTFULLY SUBMITTED, this 28 day of September, 2016, at Foothill Ranch, California.

SCOTT ENDRES

VERIFIED COMPLAINT: 22

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

State of California   )ss
County of Orange    )

On _September 28, 2016_ before me, _R. Mercado, Notary Public_, Notary Public, personally appeared SCOTT ENDRES, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _R. Mercado_

Notary Name: _R. Mercado_

My Commission Expires: _8/29/17_

Notary Phone: _(714) 322-1235_  This area for official notarial seal

Notary Registration Number: _2039497_

County of Principal Place of Business: _Orange County, CA_

VERIFIED COMPLAINT: 23

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )
County of _Orange_____ )

On _September 28, 2016_ before me, _R. Mercado, Notary Public_ ,
____Date____                              _Here Insert Name and Title of the Officer_

personally appeared ___Scott M. Endres_____
                              _Name(s) of Signer(s)_

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _R. Mercado_____
                 _Signature of Notary Public_

R. MERCADO
COMM. # 2039497
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. AUG 29, 2017

          _Place Notary Seal Above_
————————————————— **OPTIONAL** —————————————————
_Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**
Title or Type of Document: _Verified Complaint_   Document Date: _9/28/16_
Number of Pages: _23_   Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee        ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____
_____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee        ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____
_____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907